UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEN WARREN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.   4:10-CV-01353 SNLJ |
| | ) |
| CARDOZA PUBLISHING, INC. and | ) |
| AVERY CARDOZA | ) |
| (a/k/a Allen Silberstang), | ) |
| | ) |
| Defendants. | ) |

***MEMORANDUM AND ORDER***

Plaintiff has filed this multi-count breach of contract and fraud action against Cardoza Publishing, Inc. and Avery Cardoza (collectively "Defendants") arising out of six publishing contracts between Plaintiff and Defendant Cardoza Publishing, Inc.  Plaintiff alleges breach of contract; seeks an accounting; seeks declaratory and injunctive relief; and alleges unjust enrichment and fraud.  This matter is before the Court on Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3) due to lack of personal jurisdiction and improper venue [25].  Extensive responsive pleadings have all been filed, and this matter is now ripe for disposition.

**I. BACKGROUND**

Plaintiff is the author of six books on various forms of poker.  Plaintiff's books have each been published by Defendant Cardoza Publishing, Inc.  All six publishing contracts between Plaintiff and Cardoza Publishing were negotiated by Defendant Avery Cardoza.  During the relevant time period, Plaintiff was an over the road truck driver whose state of residence

fluctuated among Mississippi, Kansas, and Missouri. Defendant Cardoza Publishing is a Florida corporation with its principal place of business in Nevada.  Defendant Cardoza Publishing conducts no other business in Missouri beyond its relationship with Plaintiff.  Defendant Avery Cardoza is an employee of Cardoza Publishing.  Defendant Cardoza has never been to Missouri and negotiated each of the six publishing contracts between Cardoza Publishing and Plaintiff from New York.  In executing each of the six contracts, Defendants sent each contract to Plaintiff to sign and date.  Each contract contained a space for Plaintiff to indicate his actual address at the time he signed the contract.  Though the subject of some initial dispute, Plaintiff admits that he represented in each of the six signed publishing contracts that he was a resident of either Kansas or Mississippi at the time the contracts were signed by him.  Plaintiff contends he subsequently relocated to Missouri and completed significant work on four of his six books while residing in Missouri.  After moving to Missouri in 2007, Plaintiff and Defendants interacted via e-mail regarding Plaintiff's two yet outstanding books and Plaintiff received royalty statements and payments from Defendants while he resided in Missouri.

Plaintiff contends Defendants breached the contracts between Cardoza Publishing and Plaintiff in that Defendants failed to pay royalties due Plaintiff under his publishing contracts.  Plaintiff further contends his completed books were later translated by Defendants into foreign languages and sold in overseas markets without his knowledge.  Plaintiff alleges Defendants sent royalty statements to him in Missouri from 2007 to date which omitted royalties allegedly due Plaintiff from the sales of his books, both domestically and abroad.

## II.  APPLICABLE LEGAL STANDARD - MOTION TO DISMISS

In ruling on a motion to dismiss, a court must view the facts alleged in the complaint in

the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986). When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists. KV Pharmaceutical Co. v. J. Uriach & CIA, S.A; 648 F.3d 588, 591-92 (8th Cir. 2011); Viasystems, Inc. v. EBM-Pabst St Georgen GMBH & Co., KG, 646 F.3d 589, 592 (8th Cir. 2011). To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a *prima facie* showing of personal jurisdiction over the challenging defendant. KV Pharmaceutical, 648 F.3d at 591 ("To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists. . ."); Steinbuch v. Cutler, 518 F.3d 580, 585 (8th Cir. 2008) ("To survive a motion to dismiss, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendant's may be subjected to jurisdiction in the forum state."); Dever v. Hetzen Coatings, Inc., 380 F.3d 1070, 1072-73 (8th Cir. 2004) (plaintiff must produce some evidence; conclusory allegations are insufficient to sustain the *prima facie* showing). A plaintiff's *prima facie* showing "must be tested, not by pleadings alone, but by affidavits and exhibits" presented in support or in opposition to the motion. KV Pharmaceutical, 648 F.3d at 592; *see* Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998) (when considering whether personal jurisdiction exists under Missouri long arm statute, court may inquire by affidavits or otherwise into facts as they exist). Although a court must view evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; the party seeking to establish the court's personal jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. Viasystems, 646 F.3d at 592; Epps, 327 F.3d at 647.

## III. DISCUSSION

In order for a federal court to exercise personal jurisdiction over a non-resident defendant two prerequisites must be satisfied. Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010); *see* KV Pharmaceutical, 648 F.3d at 592. Firstly, the forum state's long arm statute must be satisfied. Viasystems, 646 F.3d at 593; Johnson, 614 F.3d at 794. Secondly, the Court must determine whether the defendant has sufficient contacts with the forum state to satisfy due process concerns of the Fourteenth Amendment. Johnson, 614 F.3d at 794; Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090 (8th Cir. 2008). The Eighth Circuit Court of Appeals suggests the due process and long arm statute inquiries should be analyzed separately. Viasystems, 646 F.3d at 593 n.2 (*citing* Bryant v. Smith Interior Design Grp., 310 S.W.3d 227, 231 (Mo. 2010)).[1]

The reach of Missouri's long arm statute is a question of Missouri law. *See* Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 311 (8th Cir. 1982). Accordingly, the Court must accept the interpretation given the statute by the Missouri Supreme Court. *See* id. Missouri's long arm statute provides for personal jurisdiction over any person or firm who, *inter alia*, either in person or through an agent transacts business, makes a contract, or commits a tort within Missouri. Mo. Rev. Stat. § 506.500.1(1)-(3). Missouri's long-arm statute has been interpreted as covering "extraterritorial acts that yield consequences in Missouri." Furminator v. Wahba, No. 4:10-CV-01941, 2011 WL 3847390 at *2 (August 29, 2011) (*quoting* Bryant v.

---

[1]At the time the parties briefed their arguments in this matter, precedent indicated only a due process inquiry was required. Since the parties briefed this issue, the Eighth Circuit in Viasystems indicated a two part inquiry, testing both the application of the state long arm statute and due process, is necessary. Viasystems, 646 F.3d at 593 n.2.

Smith Interior Design Grp., Inc., 310 S.W.2d 227, 232 (Mo. 2010)).

The second prerequisite - "minimum contacts" with the forum state -is based on the notion that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." J. McIntyre Mach. Ltd. v. Nicastro, 131 S.Ct. 2780, 2787 (2011). Due process requires that a plaintiff show that a non-resident have minimum contacts with the forum state and that the maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." Id.; World-Wide Volkswagen v. Woodson, 498 U.S. 286, 291-92 (1980); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); *see* Asahi Metal Indus. Co. v. Superior Court of California, Solano County, 480 U.S. 102, 109-112 (1987). A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there. World-Wide Volkswagen, 444 U.S. at 297; Stanton v. St. Jude Medical, 340 F.3d 690, 694 (8th Cir. 2001). Minimum contacts can cover a plethora of activities; however, sufficient minimum contacts "requires some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Nicastro, 131 S.Ct. at 2787 (*quoting* Hanson v. Denckla, 357 U.S. 235, 253 (1958)); *see* Miller, 528 F.3d at 1091.

The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" Stanton, 340 F.3d at 693-94 (*quoting* Burger King. Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations omitted)); *see also* Epps v. Stewart Information Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003). "Jurisdiction is

proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." Stanton, 340 F.3d at 694 (*quoting* Burger King, 471 U.S. at 475).  That is, "jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state.  In other words, the cause of action must 'arise out of' or 'relate to' a defendant's activities within a state." Romak USA v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (internal citations omitted).

Based on the due process standard espoused by World-Wide Volkswagen and International Shoe and their progeny, the Eighth Circuit Court of Appeals established a five factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state.  Romak USA, 384 F.3d at 984; *but see* Bryant v. Smith Interior Design Grp., 310 S.W.3d 227, 233 n.4 (Mo. 2010) (noting that the five factor test is "simply a tool" as opposed to a required test).  The five factors utilized by the Eighth Circuit Court of Appeals are: 1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties.  Romak USA, 384 F.3d at 984.  The first three factors are of "primary importance", while the last two factors are of "secondary importance" and as such are not determinative of personal jurisdiction.  Romak USA, 384 F.3d at 984; Dever, 380 F.3d at 1074; Stanton, 340 F.3d at 694; Guinness Imports, 153 F.3d at 614.

Furthermore, with respect to the third factor, the Supreme Court has differentiated between general and specific jurisdiction.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984); *see also* Viasystems, 646 F.3d at 589.  "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the

forum state, while [g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" Viasystems, 646 F.3d at 593 (*quoting* Miller, 528 F.3d at 1091) (alteration in original) (omission in original)).

      A.      *Missouri's Long Arm Statute*

In determining whether or not the Court may exercise jurisdiction over the Defendants in this matter, the Court first turns to an analysis of whether or not Missouri's long arm statute brings the Defendants within the jurisdiction of Missouri courts. Missouri's long arm statute provides that Missouri courts may exercise jurisdiction over nonresident defendants when, *inter alia*, the nonresident defendant transacts any business within the state or makes any contract within the state. Mo. Rev. Stat. 506.500(1)-(2). The goal of the Missouri long arm statute is "to extend the jurisdiction of Missouri courts to numerous classes of out-of-state defendants who could not have been sued in Missouri under the preexisting law." State ex rel Metal Serv. Center of Georgia, Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984) (*en banc*).

Section 506.500(1) of the Missouri long arm statute confers jurisdiction over nonresidents transacting business within Missouri. Mo. Rev. Stat. 506.500(1). The statute is construed broadly, such that a single transaction can justify jurisdiction if it is the transaction sued upon. Capitol Indem. Corp. v. Citizen's National Bank of Fort Scott, N.A., 8 S.W.3d 893, 904 (Mo. App. E.D. 2000). It is not necessary that a nonresident business be qualified to transact business in Missouri in order to fall within the range of activities covered by the long arm statute. Peabody Holding Co. v. Costain Grp., PLC, 808 F.Supp. 1425, 1432 (E.D. Mo. 1992). However, the "transacting business" section of the Missouri long arm statue is not without limits. The

Missouri Court of Appeals limited the reach of Mo. Rev. Stat. §506/500(1), holding that the "use of the mail or telephone communications, without more, does not constitute the transaction of business for the purposes of long arm jurisdiction in Missouri."  Johnson Heater Corp. v. Deppe, 86 S.W.3d 114, 119 (Mo. App. 2002); Capitol Indem. Corp., 8 S.W.3d at 904; *see also* Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006) ("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause").

An examination of Defendants' conduct and interactions with Plaintiff concerning Plaintiff's six publishing contracts compels the conclusion that Defendants did not transact business in Missouri within the meaning of the Missouri long arm statute.  Defendants' contacts with Missouri are quite limited.  Defendants knowingly communicated with Plaintiff in Missouri only from 2007 to date.  Defendants contacted Plaintiff in Missouri via phone and e-mail exchanges concerning the production of Plaintiff's final two books.  Defendants also sent Plaintiff's royalty statements and the corresponding payments to Plaintiff's Missouri address over the same period. Defendants, however, negotiated each of the six contracts from New York, and Plaintiff represented to Defendants that each contract was executed in states other than Missouri. Defendants have never traveled to Missouri and they have no business presence in Missouri aside from their relationship with Plaintiff.  Since Defendants' infrequent business contacts with Missouri are limited to telephone, mail, and e-mail exchanges with Plaintiff concerning existing contracts negotiated and executed outside of Missouri, Defendants are not within the reach of the "transacting business" section of the Missouri long arm statute.  *See* Capitol Indem. Corp., 8 S.W.3d at 904.

Plaintiff next argues extensively that because Plaintiff wrote portions of four of his six

books in Missouri, Missouri courts have jurisdiction over the enforcement of the contracts governing the creation and publication of his books pursuant to Mo. Rev. Stat. §506.500(2). Section 506.500(2) of the Missouri long arm statute confers jurisdiction over nonresidents who make contracts within the state of Missouri.  Mo. Rev. Stat. § 506.500(2). Application of Missouri's long arm statute requires the Court to focus on where the contract was made, not where a plaintiff chooses to perform his end of the bargain. Id.  A contract is deemed to have been made in Missouri if the final act of acceptance occurs in Missouri.  Johnson Heater Corp., 86 S.W.3d at119.

Only one of the six publishing contracts between Plaintiff and Defendants was accepted by Plaintiff in Missouri.  Though Plaintiff represented to Defendants that the publishing contract governing Ken Warren Teaches Omaha was accepted and signed in Kansas,[2] Plaintiff now contends he actually accepted the publishing contract in Missouri.  Taking the evidence in a light most favorable to the Plaintiff, the contract for Ken Warren Teaches Omaha was made in Missouri, and therefore personal jurisdiction under §506.500(2) may be exercised over Defendants as to this contract.  Plaintiff's other five contracts with Defendants, however, do not support exercising personal jurisdiction over Defendants in Missouri.  Plaintiff's first two contracts with Defendants, regarding Texas Hold 'Em 2 and Ken Warren Teaches Hold 'Em, were signed and accepted by Plaintiff in Mississippi and Kansas, respectively.  Since Plaintiff and Defendants' first two contracts were accepted in Mississippi and Kansas, neither contract

---

[2]In different portions of the pleadings and motions filed in this matter, Plaintiff refers to his third book with Defendants as Winners Guide to Omaha.  The copy of the publishing contract filed with the Court as Plaintiff's Exhibit 3 refers to the book as Ken Warren Teaches Omaha. Accordingly, the Court will refer to Plaintiff's third book as Ken Warren Teaches Omaha.

was made in Missouri. Similarly, Plaintiff signed and accepted each of the final three publishing contracts, pertaining to The Big Book of Poker, Ken Warren Teaches 7 Card Stud, and Ken Warren Teaches Texas Hold 'Em 2, in Kansas. Because Plaintiff and Defendants' final three publishing contracts were accepted by Plaintiff in Kansas, none of the final three contracts were made in Missouri. Accordingly, only the contract for Ken Warren Teaches Omaha satisfies the requirements of §506.500(2). Having determined that Plaintiff satisfies the Missouri long arm statute as to only one of the six subject books, Ken Warren Teaches Omaha, the next question is whether exercising personal jurisdiction over Defendants is consistent with the principles of due process as to Plaintiff's claims in connection with this contract.

  B. *Due Process Concerns*

In order for the Court to properly exercise personal jurisdiction in compliance with due process, Defendants must have acted such that they would reasonably anticipate being haled into court in Missouri. In order to reasonably anticipate being haled into court in Missouri, Defendants must have, through their conduct, purposefully availed themselves of Missouri law. In the instant case, Plaintiff concedes that Defendants do not have sufficient contacts to justify exercising general personal jurisdiction. However, Plaintiff argues that Defendants' contacts with Missouri relating to the publishing contracts at issue are sufficient to justify the Court's exercise of specific personal jurisdiction over Defendants in this matter.

Any discussion of the due process concerns in exercising specific personal jurisdiction as a result of Defendants' contacts with Missouri arising out of Plaintiff's books other than Ken Warren Teaches Omaha is rendered moot based upon the Courts previous findings under Mo. Rev. Stat. §§506.500(1) & (2). Accordingly, the only remaining relevant due process inquiry

concerning specific personal jurisdiction over Defendants relates to Defendants' contacts with Missouri arising out of the Ken Warren Teaches Omaha contract.

Plaintiff argues that he signed the publishing contract for Ken Warren Teaches Omaha in Missouri; thus the Court may properly exercise jurisdiction over Defendants for a cause of action arising out of the breach of that publishing contract. Plaintiff supplements his argument by contending that because he wrote roughly one-half of Ken Warren Teaches Omaha while residing in Missouri, sufficient contacts exist to exercise specific personal jurisdiction over Defendants relating to the publication of Ken Warren Teaches Omaha. Defendants initially counter that because Plaintiff represented to Defendants that the contract was executed in Kansas, Defendants could not have purposefully availed themselves of Missouri law. Defendants further argue that Plaintiff's decision to draft roughly one-half of the book from Missouri constitutes a unilateral act of the Plaintiff insufficient to justify exercising personal jurisdiction over Defendants. For the reasons discussed more fully below, Defendants do not have sufficient contacts with Missouri relating to Plaintiff's third book, Ken Warren Teaches Omaha, to warrant exercising specific personal jurisdiction over them in Missouri.

As discussed above, Defendants must have purposefully availed themselves of Missouri law such that they would reasonably anticipate being haled into a Missouri court. Defendants have taken no such action to purposefully avail themselves of Missouri law. Though Plaintiff contends he signed the publishing contract for Ken Warren Teaches Omaha while residing in Missouri, he represented to Defendants in the contract itself that he signed the contract in Kansas. Further, Defendants sent the contract to Plaintiff at a Kansas address. Accordingly, even if taken as true that Plaintiff actually signed the contract in Missouri, it cannot be said that Defendants

purposefully availed themselves of Missouri law when every indication given to them by Plaintiff was that Plaintiff resided in Kansas at the time the contract was negotiated and executed.

Similarly, Plaintiff's decision to draft roughly one-half of Ken Warren Teaches Omaha in Missouri is insufficient to confer jurisdiction over Defendants. Plaintiff's unilateral action in performance of a contract cannot justify exercising specific personal jurisdiction over out of state Defendants in a dispute arising out of the contract. Mountaire Feeds, Inc. v. Agro Impex, S,A, 677 F.2d 651, 655 (8th Cir. 1982); see Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contract with the forum State"). In Mountaire, a South American animal feed corporation entered into sales contracts whereby the South American company would purchase animal feed from a seller in Arkansas. Id. The buyer was a Panamanian corporation with a principal place of business in Dallas, Texas. Id. at 652. The buyer entered into contracts with the seller in Arkansas, but never was physically present in Arkansas and conducted no other business in Arkansas. Id. When a dispute arose out of the sales contract, the seller attempted to sue the buyer in Arkansas state court, and the case was removed to Arkansas federal court. Id. In reviewing the district court's order to dismiss the case for lack of personal jurisdiction over the defendant buyer, the Eighth Circuit held that the seller's "unilateral performance in the forum state is insufficient to support the exercise of personal jurisdiction over [the defendant]." Id. at 655.

In Mountaire, the nonresident defendant had significantly greater contacts with the forum state than Defendants in the present case have with Missouri. In Mountaire, the defendant knowingly entered into a contract with an Arkansas company with knowledge that the contract

would be performed by the plaintiff in Arkansas. In the present case, Defendants had no contacts with Missouri whatsoever beyond their obligation to send royalties to Plaintiff following his move to Missouri in 2007. Accordingly, Defendants do not have sufficient contacts with Missouri relating to the making and subsequent execution of the publishing contract for <u>Ken Warren Teaches Omaha</u> justifying exercising specific personal jurisdiction over them.

Application of the Eighth Circuit's five factor test further supports the Court's decision. First, Defendants' only contacts with Missouri regarding <u>Ken Warren Teaches Omaha</u> involve sending Plaintiff his royalty statements and accompanying payments from 2007 to date. Prior to 2007, royalty statements and checks were sent to states other than Missouri. Second, Defendants have no contacts with Missouri relating to the <u>Ken Warren Teaches Omaha</u> contract beyond the subject royalty statements. Third, Plaintiff's cause of action arises out of the allegedly breached contract for <u>Ken Warren Teaches Omaha</u>, which was negotiated outside of Missouri and sent to Plaintiff at a Kansas address. Plaintiff expressly represented that the contract was executed in Kansas. In short, Defendants had no indication whatsoever that they were entering into a contract with any connection at all to Missouri. Accordingly, it cannot be said Defendants purposefully availed themselves of Missouri law. The supplemental fourth and fifth factors fail to support exercising personal jurisdiction as well. While Missouri generally has an interest in providing access to a legal remedy for its citizens, it cannot be said that Missouri has a strong interest in providing a remedy for Plaintiff's contract that has no connection to Missouri aside from Plaintiff's alleged execution of the contract in Missouri and unilateral decision to relocate to Missouri some five years after the contract was executed. Finally, it is not convenient for both parties to litigate in Missouri. While Plaintiff is currently domiciled in Missouri, Defendants are

not citizens of Missouri, have never been to Missouri, and maintain no presence in Missouri beyond their present obligation to send Plaintiff's royalty payments to his Missouri address. Forcing Defendants to litigate this action in Missouri would impose a significant burden on them based solely upon the unilateral conduct of the Plaintiff.  Accordingly, Defendants' contractual relationship with Plaintiff regarding Ken Warren Teaches Omaha cannot justify exercising specific personal jurisdiction over Defendants.

      C.     *Plaintiff's Fraud Claim*

Plaintiff also alleges that Defendants committed the intentional tort of fraud by failing to disclose sales of his books in various overseas markets, thereby misrepresenting amounts due to Plaintiff under the publishing contracts.  Under Missouri's long arm statute, "the commission of a tortious act" within Missouri brings a defendant within the jurisdiction of Missouri courts.  Mo. Rev. Stat. 506.500(3).  Extraterritorial acts that produce consequences in the state, such as fraud, are within the reach of the tortious act section of the Missouri long arm statute.  Bryant v. Smith Interior Design Grp., Inc, 310 S.W.3d 227, 232 (8th Cir. 2010).  In Bryant, the Missouri Supreme Court held that a Florida interior designer who sent allegedly fraudulent statements to a client in Missouri by e-mail, telephone, and standard mail was within the reach of Missouri's long arm statute.  Id.  In the present case, Plaintiff alleges Defendants sent misleading and fraudulent royalty statements to Plaintiff in Missouri from 2007 to date.  Therefore, under Bryant, Defendants are within reach of Missouri's long arm statute.

Concluding Defendants are within reach of Missouri long arm statute §506.500(3) does not end the inquiry.  Again, in order for this Court to properly exercise personal jurisdiction over Defendants the due process concerns of the Fourteenth Amendment must be satisfied.  In cases

involving allegations of fraud, courts apply the Calder "effects test" to determine if jurisdiction is consistent with due process.  *See* Calder v. Jones, 465 U.S.  783, 789-90 ((1984); Oriental Trading Co. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001).  Pursuant to the effects test, a "defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing acts 1) were intentional, 2) were uniquely or expressly aimed at the forum state, and 3) caused harm, the brunt of which was suffered - and defendant knew was likely to be suffered - [in the forum state]."  Johnson v. Arden, 614 F.3d 785, 796 (8th Cir. 2010) (*quoting* Lindgren v. GDT, LLC, 312 F.Supp.2d 1125, 1132 (S.D. Iowa 2004)) (modification in original).  The effects test confers jurisdiction over an out of state defendant who performs a tortious act "performed for the very purpose of having consequences felt in the forum state."  Id. (*quoting* Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1390-91 (8th Cir. 1991).  The effects, test, however, does not replace the five factor analysis used by the Eighth Circuit.  Dakota Indus., Inc. v Dakota Sportswear, Inc., 946 F.2d 1384, 1391 (8th Cir. 1991).  Rather, the Calder effects test "requires the consideration of *additional factors* when an intentional tort is alleged."  Id. (emphasis added).

      Defendants do not have sufficient contacts with Missouri to allow the Court to exercise personal jurisdiction over them in connection with the fraud claim.  At the heart of any inquiry into whether a court may exercise personal jurisdiction over a non-resident defendant is the requirement that a defendant purposely avail themselves of the law of the forum. *See* Nicastro, 131 S.Ct. at 2787.  First, an analysis of the nature and quality of Defendants' contacts with Missouri reveal that the contacts are precisely the type of random and fortuitous contacts that due process aims to avoid, in that the Defendants have done nothing in Missouri beyond continue its

contractual obligation to send Plaintiff's royalties to Missouri. *See* Stanton, 340 F.3d at 693-94. Defendants cannot reasonably be expected to appear in a Missouri court as the result of their continuing contractual obligation to send mail into Missouri in the absence of any other contacts with Missouri, even if the alleged tortious conduct is related to the mailings entering the forum. *See* Coen v. Coen, No. 05-596, 2006 WL 2727219, at *19 (D. Minn. 2006) (*aff'd*, 509 F.3d 900 (8th Cir. 2010)) (holding plaintiff could not show defendants purposefully directed actions at Minnesota because Defendants were responding to Plaintiff's inquiries).  Second, the allegedly tortious conduct in the present case involves Defendants sending allegedly fraudulent royalty statements arising out of contracts entered into between 1996 and 2004 to Plaintiff at his Missouri residence from 2007 to date.  In relation to the life of the contracts at issue, Defendants' contacts with Missouri are incidental and ancillary to the larger performance of the contracts as a whole.  Third, the core of Plaintiff's fraud claims are that he was underpaid pursuant to his contracts with Defendants.  Thus, Plaintiff's cause of action is more closely related to breach of contract than common law fraud.  As discussed previously, the Court does not have jurisdiction over Defendants based on Plaintiff's breach of contract claim.  Finally, while Missouri undeniably has an interest in remedying wrongs done to its citizens, it cannot be said that it is convenient for the Defendants to litigate this matter in Missouri.  As previously discussed, Defendants are a Florida corporation and an employee based in Nevada.  Further, Defendants have no presence in Missouri of any kind beyond their previously consummated contractual relationship with Plaintiff.

Even considering the additional factors of the Calder effects test, Plaintiff's allegation of fraud against Defendants does not tilt the balance in Plaintiff's favor.  Though Plaintiff alleges

Defendants engaged in tortious conduct by sending allegedly misleading royalty statements to him in Missouri, Plaintiff has failed to meet its burden of making a prima facie showing that Defendants' actions were deliberately or uniquely targeted at Missouri.  Plaintiff's allegedly fraudulent conduct is based on Defendants' contractual obligations pursuant to contracts entered into between 1996 and 2004.  It was not until three years after executing the last publishing contract that Plaintiff moved to Missouri and Defendants, for the first time, had to change Plaintiff's mailing address for royalty statements and checks to Missouri.  Plaintiff has failed to make a *prima facie* showing that mailing the allegedly fraudulent documents after 2007 to Missouri due to Plaintiff's change of residence demonstrates that such mailings were made for the "the very purpose of having consequences felt in [Missouri]."  Exercising personal jurisdiction over Defendants based on pre-existing contracts entered into in other states, with no other connection to Missouri, would base jurisdiction on precisely the type of fortuitous and random connections that due process aims to avoid.

Accordingly, for the reasons set forth above, the Court cannot exercise specific personal jurisdiction over Defendants.  Therefore, Defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Motion to Dismiss Due to Lack of Personal Jurisdiction [25] shall be and is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants Motion to Dismiss due to Improper Venue [25] shall be and is **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that all of Plaintiff's claims shall be and are **DISMISSED**

**WITHOUT PREJUDICE.**

Dated this  2nd   day of December, 2011.

_____
UNITED STATES DISTRICT JUDGE